Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 303-0552
spencer@spencersheehan.com

United States District Court
Southern District of New York                                        7:20-cv-08467

Jessica Klausner, individually and on behalf
of all others similarly situated,

                                        Plaintiff,

                - against -                                        Class Action Complaint

Annie's, Inc.,

                                        Defendant

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge: Annie's, Inc.

        1.      Annie's, Inc. ("defendant") manufactures, packages, distributes, markets, labels and

sells Bunny Fruit Snacks – Tropical Treats fruit snack pouches under their Annie's Homegrown

brand ("Product").

        2.      The average consumer spends a mere 13 seconds making an in-store purchasing

decision, or between 10 to 19 seconds for an online purchase.

        3.      That decision is heavily dependent on a product's packaging, and particularly the

package dimensions.

        4.      The packaging of a product is known as the Silent Salesman since it is the first thing

seen and is basically saying, "Look at how big I am."

        5.      This gives the impression there is a substantial amount of product in the package.

        6.      Most studies show that 75 to 80 percent of average consumers don't look at any label

information, no less the net weight, while they may look at the nutritional information.

7.      While a reasonable consumer does not expect the food package to be bursting at the seams, he or she does expect there to be an amount of product in the box that bears a reasonable relationship to the size of the package.

8.      Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it is a better value.

9.      Defendant intentionally packages the Product in opaque cardboard containers that are constructed in such a way that the consumer cannot fully view the contents.[1]

 

10.      The product package is made of heavy cardboard and the exterior dimensions are: 7" X 4.5" X 1.5".

---

[1] Credit to David Greenstein.

11.    Inside the cardboard package are 5 small flexible pouches each containing 0.8 oz/23g of product, for a total net product weight of  4oz (115g).



12.    Even if the consumers could view the inside of the package, they would only see five secondary packages, not knowing the amount of edible product in each package.



13.    The average consumer cannot mentally convert a net weight number into a visual volume.

14.    The product package is made, formed and filled so as to intentionally mislead consumers.

15.    When deconstructed, the attached pictures show that there is more than 75% slack fill.

16.    Based on the level of fill of the fruit snacks removed from secondary packaging, there is almost 79 percent slack fill, as shown by the fill to 1.5 inches based on 7-inch height (21.4 percent).




17. When separated, the Product's content appear as shown in the image below.



4



18.    Due to the deceptive method of packaging the Product, there was no way for Plaintiff to accurately ascertain the amount of edible product in the package.

19.    The front of the package does not indicate how many individual fruit snacks are contained in the entire package or in the secondary packaging.

20.    Though the front label lists a net weight, Plaintiff and consumers cannot know the weight of the individual fruit snacks in advance such that they would be put on notice about the small amount of product they will receive.

21.    Plaintiff and consumers cannot shake or otherwise manipulate the package to determine the actual amount of edible product contained in the package because the individual fruit snack pieces are within secondary packaging and congealed together therein, such that there will be little if any noticeable sound revealing the paucity of product.

22.    The product is not fragile or "delicate" such that outer packaging and secondary packaging in the sizes used are necessary.

23.    The sole purpose of the secondary packaging (the pouches) is to "bulk up" the interior of the cardboard adding to the deception that there is more product in the cardboard container than there actually is.

24.    The secondary packages were themselves only about 50% full of edible product.

5



25.     21 C.F.R. § 100.100 ("Misleading containers.") provides that  "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading."

26.     If a container contains non-functional slack fill, it is misleading if a consumer is unable to fully view the contents of the container.

27.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.

28.     Nonfunctional slack-fill is "the empty space in a package that is filled to less than its capacity for reasons other than:  (1) Protection of the contents of the package;  (2) The requirements of the machines used for enclosing the contents in such package;  (3) Unavoidable product settling during shipping and handling;  (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers; (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or

durable commemorative or promotional packages; or (6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices)." 21 C.F.R. § 100.100(a)(1)-(6) ("Safe Harbors").

29.     None of these safe harbors apply.

30.     First, the contents of the container would be and is adequately protected by a hard cardboard box of a smaller size.

31.     Second, the machines used for enclosing the contents can be adjusted in one or more of the following ways: forming the box from cardboard can be adjusted so that the outer box can be reduced in size (less cardboard used), additional secondary packaging units can be filled in the box at its current size and/or more product can be filled in the five secondary packaging units.

32.     Third, no issue exists with respect to the contents of the container – including the secondary packaging unit and the product contained within – settling during shipping and handling.

33.     This is because the fruit snacks are of high density and naturally stick together due to their inherent stickiness, as shown in the image below.



34.   The secondary packaging units are filled in the outer box and immediately come to rest at the bottom of the outer box, and are not otherwise suspended at a higher level in the box only to fall to the bottom during settling and handling.

35.   Though there may be a need for the secondary packaging to perform a specific function inherent to the nature of the food – distribution and consumption of the product in set amounts capable of being transported – in a lunchbox, purse, pockets, etc. – this safe harbor is not intended to provided for containers which approach 80 percent slack fill.

36.   The outer cardboard box and secondary packaging units are not considered to be "reusable containers" and are not part of the presentation of the food and do not have value in proportion to the value of the product and independent of its function to hold the food.

37.   The outer box and secondary packaging are discarded after consumed.

38.   No inability exists to increase the level of fill or to reduce the size of the package to some minimum package size necessary to accommodate required food labeling or perform another purpose.

39.   In fact, it is just as easy to design a smaller cardboard box, which would still be capable of holding the secondary packaging units and displaying all required labeling information.

40.   There is no need for a tamper resistant device, as the Product is currently sold without such a device.

41.   Therefore, the presence of a tamper resistant device cannot be said to be a barrier to reducing the size of the outer box.

42.   Because the package does not allow consumers to fully view its contents, and contains nonfunctional slack-fill, the packaging misleading to consumers.

43.   In fact, defendants intentionally designed the packaging to deceive plaintiff and the

class members.

44.    The Product's packaging size was a material factor in Plaintiff's and consumers' decision to purchase the Products.

45.    Plaintiff and Class Members expected to receive more Product than was actually being sold.

46.     As a result of Defendant's illegal packaging, consumers purchased the Product and have been damaged by Defendant's illegal conduct.

47.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

48.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

49.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

50.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

51.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $4.89 per 32 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

52.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

53.    Under CAFA, district courts have "original federal jurisdiction over class actions

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal

diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

54.    Plaintiff Jessica Klausner is a citizen of New York.

55.    Defendant Annie's, Inc., is a Delaware corporation with a principal place of business

in Minneapolis, Hennepin County, Minnesota and is a citizen of Minnesota.

56.    "Minimal diversity" exists because plaintiff Jessica Klausner and defendant are

citizens of different states.

57.    Upon information and belief, sales of the Product in New York exceed $5 million

per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5

million per year.

58.    Venue is proper in this judicial district because a substantial part of the events or

omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase

the Product and the misleading representations and/or their recognition as such.

59.    This court has personal jurisdiction over defendant because it conducts and transacts

business, contracts to supply and supplies goods within New York.

### Parties

60.    Plaintiff Jessica Klausner is a citizen of New York, Monroe, Orange County.

61.    Defendant Annie's, Inc. is a Delaware corporation with a principal place of business

in Minneapolis, Minnesota, Travis County and is a citizen of Minnesota.

62.    During the relevant statutes of limitations, plaintiff purchased the Product within her

district and/or State for personal and household consumption and/or use in reliance on the

representations of the Product.

63.    Plaintiff Jessica Klausner purchased the Product multiple times a year for at least the

past three years, at stores including ShopRite, 785 NY-17M Suite 1, Monroe, NY 10950.

64.     Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and expected the Product to contain more of the fruit snacks than it did.

65.     Plaintiff was deceived by and relied upon the Product's deceptive labeling.

66.     Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

67.     The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

68.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

69.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

70.     Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

71.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

72.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

73.     Plaintiff is an adequate representatives because her interests do not conflict with other members.

74.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

75.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

76.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

77.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statute)

78.     Plaintiff incorporates by reference all preceding paragraphs.

79.     Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

80.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

81.     Defendant misrepresented the quantitative, substantive, qualitative, compositional and/or organoleptic attributes of the Product.

82.     The front label net weight of the outer box and secondary packaging units fails to tell consumers how much of actual product is contained therein.

83.     Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

84.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

85.     Plaintiff incorporates by reference all preceding paragraphs.

86.     Defendant misrepresented the quantitative, substantive, quality, compositional

12

and/or organoleptic attributes of the Product.

87.    The front label net weight of the outer box and secondary packaging units fails to tell consumers how much of actual product is contained therein.

88.    Defendant had a duty to disclose the truth and knew or should have known same were false or misleading.

89.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

90.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

91.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

92.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

93.    Plaintiff incorporates by reference all preceding paragraphs.

94.    The Product was manufactured, packaged, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quantitative, qualitative, organoleptic, and/or compositional attributes it did not.

95.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

96.    The front label net weight of the outer box and secondary packaging units fails to tell

consumers how much of actual product is contained therein.

97.   Defendant had a duty to disclose the truth and knew or should have known same were false or misleading.

98.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

99.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

100.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

101.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

102.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

103.   Plaintiff incorporates by reference all preceding paragraphs.

104.   Defendant misrepresented the quantitative, substantive, qualitative, compositional and/or organoleptic attributes of the Product.

105.   The front label net weight of the outer box and secondary packaging units fails to tell consumers how much of actual product is contained therein.

106.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

107.   Plaintiff incorporates by reference all preceding paragraphs.

108.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 11, 2020

                                                            Respectfully submitted,

                                                            Sheehan & Associates, P.C.
                                                            /s/Spencer Sheehan
                                                            Spencer Sheehan
                                                            60 Cuttermill Rd Ste 409

Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-08467
United States District Court
Southern District of New York

Jessica Klausner, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Annie's, Inc.,

Defendant

## Class Action Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 11, 2020

/s/ Spencer Sheehan
Spencer Sheehan